918 F.2d 19
 GMAC COMMERCIAL CORPORATION, Household Finance Corporation,
ITT Commercial Finance Corporation, McDonnell
Douglas Finance Corporation, and
Westinghouse Credit
Corporation,
Plaintiffs-Appellees,
v.
NIAGARA MOHAWK POWER CORPORATION, Defendant-Appellant.
 No. 521, Docket 90-7502.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 15, 1990.
Decided Nov. 1, 1990.
 
 David M. Lindley, New York City (Sutton Keany, Maurice W. Heller, Maria M. Homan, Winthrop, Stimson, Putnam & Roberts, of counsel), for defendant-appellant.
 James W.B. Benkard, New York City (James L. Kerr, Ronan P. Harty, Richard B. Zabel, Davis Polk & Wardwell, of counsel), for plaintiffs-appellees.
 Before OAKES, Chief Judge, PIERCE and WINTER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Niagara Mohawk Power Corporation ("NMPC") is a public utility corporation that raises capital in part through the issuance of preferred shares of stock. In 1980 and 1981, pursuant to two preferred stock purchase agreements (the "Agreements"), NMPC issued two series of preferred stock to a group of institutional investors (the "Shareholders"), plaintiffs-appellees in this action. As owners of the preferred stock, Shareholders received relatively high dividends and, in addition, were entitled to an 85% dividends received deduction ("DRD") under the Internal Revenue Code as it then stood. See Pub.L. No. 88-272, Sec. 214(a), 78 Stat. 52 (1964).
 
 
 2
 Set forth in section 6.2 of the Agreements is a standard tax indemnification provision guaranteeing Shareholders an agreed-upon after-tax yield on their stock. Specifically, section 6.2 provides that if Shareholders' yield falls below the guaranteed level, Shareholders may demand indemnification from NMPC. Section 6.2 also provides that NMPC may repurchase Shareholders' stock at par value either upon a Shareholder's demand for indemnification, or upon NMPC's own "good faith determination" that it faced a "substantial risk" of being required to make indemnity payments.
 
 
 3
 In October 1986, the Tax Reform Act reduced the DRD from 85% to 80%, see Pub.L. No. 99-514, Sec. 611(a)(1), 100 Stat. 2249 (1986) (current version at 26 U.S.C.A. Sec. 243(a)(1) (1988)), thus triggering Shareholders' right to demand indemnification. Although no Shareholder made such a demand, NMPC notified Shareholders on December 12, 1986 that it intended to redeem its stock based on its determination that there was a substantial risk that it would be required to make indemnity payments as a result of the tax reform.
 
 
 4
 On July 20, 1989, Shareholders brought suit in the United States District Court for the Southern District of New York to obtain a declaration that NMPC's attempted stock repurchase was void and to recover damages based on the theory that NMPC did not make the required good faith determination of substantial risk before attempting to redeem. In response to the complaint, NMPC moved to compel arbitration and stay litigation pending arbitration pursuant to 9 U.S.C. Sec. 3. In an opinion and order dated May 7, 1990, the district court (Kram, J.) denied NMPC's motion, holding that the instant litigation was governed by this court's recent decision in McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir.1988). We now affirm.
 
 
 5
 As the district court correctly noted, the facts of this case are materially identical to those we encountered in McDonnell Douglas. Like NMPC, the defendant-utility in McDonnell Douglas asserted a right to redeem its preferred stock early and at par value when the DRD was reduced in 1986. Like Shareholders, the plaintiff-investors in McDonnell Douglas claimed that the utility's decision to redeem had not been made in "good faith" as required by the governing stock purchase agreements. We held in McDonnell Douglas that the arbitration clause at issue--which is substantively identical to the clause now before us--did not reach disputes as to the utility's good faith. See 858 F.2d at 832. We therefore affirmed the district court's order denying the utility's motion to compel arbitration.
 
 
 6
 NMPC now urges us to not to follow McDonnell Douglas, and points to three features of that case that are absent in the present litigation. First, the arbitration clause in McDonnell Douglas contained certain additional language that may have served to limit the scope of arbitrable issues. See 858 F.2d at 832-33. Second, the investors in McDonnell Douglas filed certain affidavits indicating that the arbitration clause at issue was, by industry practice, intended to reach tax questions only. See id. at 833. Third, the utility in McDonnell Douglas did not immediately contest the investors' narrow interpretation of the arbitration clause during the pretrial conference. See id. We find that none of the grounds on which NMPC would have us distinguish McDonnell Douglas was central to our conclusion in that case, which turned chiefly on the plain language of the arbitration clause and its import within the context of the indemnification provision as a whole. See id. at 832.
 
 
 7
 Accordingly, because none of the proposed grounds for distinguishing McDonnell Douglas can justify a different result in this otherwise identical case, we affirm.